Good morning. Thank you. You may be seated. This is the time set for argument in a number of cases that we have scheduled for this morning, but I believe three of them, or two of them, have been submitted on the briefs. The first case is Arena Maribel Barrera Larreynaga. That one is set for oral argument, so if the Council is ready, or I think both are on video, we can begin. Kenneth Larkin Good morning, Your Honors, and may it please the Court. My name is Kenneth Larkin Vanderhoff. I represent Ms. Barrera Larreynaga. I would like to reserve two minutes of my time for rebuttal. Substantial evidence in the record supports Ms. Barrera having met her burden in showing that the government of El Salvador is unable and unwilling to protect her, such that this panel is compelled to overturn the agency's decision to the contrary. The appropriate remedy here on this issue alone would be remand to the agency. Ms. Barrera testified credibly in support of her applications for relief as to severe abuse and sexual assault by her then-partner, and this is not disputed. It is also not disputed that there is considerable crime and violence in El Salvador, including domestic violence, and that the El Salvador's Attorney General Office reports that less than 10 percent of defendants in sexual-related crimes are convicted. Substantial evidence in the record supports Ms. Barrera's testimony. I would note that the Department of State's report says that it is widely believed that these types of crimes are under-reported for a number of reasons, a few of which are fear of reprisals, ineffective and unsupportive responses by the authorities to victims, and a perception among victims that cases are unlikely to be prosecuted, which is in fact true, and that's at the certified record. Is there anything in that documentary evidence that talks specifically to the area where Petitioner lived? The report, no, the report is countrywide, Judge. And is there anything in the record that Petitioner offered to the agency specific to the police willingness or ability to protect her in the area where she lived? Was there anything about police in this area are corrupt or police in this area turn a blind eye, anything like that? No, Judge, not to her particular area. My understanding is the statistics that we do have of less than 10 percent is speaking countrywide and that we do not have, as to prosecutions, we do not have, she did not testify to anything specifically about the police in her area. Yes, Judge, she did not report to the abuse. Her stated reason was for fear of reprisals. As this court is aware in Ornelas Chavez de Gonzalez of this very court and among other cases, reporting is not a requirement. And if the individual can show that it would be futile or dangerous to report. And so, again, the less than 10 percent conviction rate would tend to were she to have reported and in fact dangerous if they are unable to prevent the future abuse that would have happened to her. So in your view, based on the country report, everybody in your client's position would automatically win if they if they suffered significant domestic abuse or sexual violence based on the country report. I think that the country reports indicate that government of El Salvador is unable or unwilling to protect a similarly situated person to my client. But note for to be granted relief, this is one of many burdens that an individual would have to meet, such as belonging, that the abuse rises to the level of persecution and is on an account of one or more protected grounds. On that point, let me ask you this. I gather that the question has so far been pretermitted as to whether or not she belongs in a protected class and the protected class is someone unable to leave an abusive relationship. Is that right? That's correct, Judge. And the board did not reach that issue in this case. And so for that reason, among others, as I look down the line in this case, if we were to hold that the government was unable or unwilling to protect. And so you went on that point and we grant and send it back. My problem is down the road. And I realize this question is not yet in front of us. She's not in the class. She left. Yes, there's a significant case law around that, Judge. But unable to leave, meaning unable could could be unable to leave absent fleeing the country. I mean, it's and seeking the protection of asylum from the United States. So the fact that she's no longer with if that were this, the group that we had proposed in this case is had been founded by the board to be a particular social group. Now, that case has changed back and forth, but it currently can be a cognizable social group. And so to say the fact that she is no longer with her abuser makes her no longer a part of that class. Well, then that would mean that this this this particular social group would not exist. It's necessarily somebody who has come here seeking protection. Yeah. Well, it's not in compared to many people for a fairly short time, several months. It was it was several months, but it was dozens of sexual assaults, rape and significant abuse. I don't wish to underplay the amount of sexual violence to which she was subjected while she was in the relationship. It was it was it was pretty terrible. No, I'm not underplaying that at all. Can you can you distinguish the two main cases the government sides? I think it's Castro Perez versus Gonzalez and Velasquez Gaspar versus Barr. Yes, Judge. So in Castro Perez, it's a case of domestic violence rising out of Honduras, whereas not the case here. But there, the court cited saying that the record in the country report profile was limited and that the information there was not, the court said, enlightening as to whether or not the government could was willing or able to protect. That's not the case here. And I think that the country conditions evidence make clear, given the statistics already cited, the Department of State saying that despite laws in place for survivors of domestic violence, rape, sexual assault and violence against women and girls is a widespread and serious problem and that the government's efforts, the Department of State says the Salvadoran government's efforts to combat domestic violence have been minimally effective. So I can't speak to what exactly was in the country report profile in Castro Perez. But the court there said that it was not particularly enlightening, which I don't think believed to be the case here. Additionally, in that case, the distinguished the country report profile apparently distinguished between rape and domestic violence and and defined domestic violence in Honduras apparently as any act harming a woman, which is not otherwise classified in the penal code. And so there, the court, I believe, spoke to the petition not being able to prove that the government in Honduras in that case ignored a report of rape because it was specifically separated from domestic violence. That also is not the case here. And in the matter of Velasquez Gaspar, there are two main distinguished points that distinguish from the case here. One is the petitioner in that case was found to be not credible. There's an adverse credibility finding by the immigration judge in that case that is not present here. My client was found to be credible. And so her testimony is to be taken as true. And second, that case arose out of Guatemala. And apparently in Guatemala country conditions reports, there was evidence that there were resources available to survivors of domestic violence. And that is absent here. And the court said that it took that to mean the government was both willing and able to protect. If that is... Would you like to reserve your time? Yes, Judge. Thank you. I would reserve my time. Thank you. Counsel? Good morning, Your Honors. May it please the court. My name is Jocelyn Wright. I'm here on behalf of the Attorney General. The record does not compel reversal of the agency's denials of petitioners' applications for asylum, withholding of removal and cat protection. But because petitioner today has focused solely on the domestic violence claim for asylum and withholding, I will similarly limit my discussion to that issue, unless the court has questions on the political opinion aspect and also the cat protection denials. So with respect to the unable or unwilling determination, which is the dispositive ground upon which the board denied asylum in this case, the board here properly considered all of the relevant evidence. It considered what the court has characterized in Velazquez-Gaspar as the uncontested but relevant and non-dispositive factor that she never reported what was happening to her to the authorities. That absence to report while not dispositive is certainly indicative and probative to the question of whether, if given the opportunity and if the authorities were aware of what was happening, would they have been willing to protect her? And the country conditions report in this case, contrary to what opposing counsel has characterized, do show that there are resources and efforts by the El Salvadoran government to combat the widespread scourge of domestic violence and violence against women. So for example, and this is at AR-250, which is the country conditions report. And again, and as an aside, the evidence regarding country conditions in this case are very sparse. It is basically the Department of State country report. Petitioner submitted two other articles, but really they weren't very probative as to what was going on with respect to her claim and the country of El Salvador in general. So at AR-250 and 251, the law criminalizes rape. The attorney general's office is required to prosecute whether or not the victim presses charges and the victim is not allowed to withdraw the criminal charge. The penalty for rape is six to 10 years of imprisonment with a maximum of 20 when it's the, if the victim is of a special class, which is rape as a child or persons with disabilities. Rape, the board acknowledged rape is underreported because societal and cultural pressures on victims, fears of reprisal, ineffective, perhaps an unsupportive responses by the authorities do exist. But that is also, and the board properly acknowledged that it was some of these efforts may be minimally effective. But again, the law prohibits domestic. Ms. Wright, I'm sorry, let me ask you a question because this is a challenging issue because we have, you know, the country report is unrefuted. And then we have the basically the subjective opinion of the petitioner and I guess her aunt. And so I'm trying to figure out what do we look toward this subjective opinion of the petitioner aunt over the objective evidence concerning how effective the police are? I guess that's one question that I have. And then on the minimally effective, it sounds like you're arguing that even though it's not great that it's at least minimally effective. And I'm just wondering, are there any cases that state that minimally effective public awareness campaigns are sufficient to show that the government's willing and able for prosecution? So if you could, those, both of those questions, I would appreciate it. Focus on those. I'm taking your last question first, Your Honor. Garcia Millan, which is at 755 F3rd 1026. At page 1035 of that decision, the court held that the Guatemalan government's steps to combat violence against women included hefty penalties for rape, establishing a special prosecutor for crimes against women, a special unit for sex crimes, prosecuting crimes against women, and that kind of evidence is also present here, as well as in Velazquez-Gaspar, similar country conditions evidence. And in this case, AR-250 and 251. In Velazquez-Gaspar though, didn't the majority there conclude that Guatemala was doing enough work to protect the attacked, I think is what they were focused on. The report, I think, showed that Guatemala had protection programs for victims and options to obtain restraining orders against abusers from justices of the peace and shelters, including a shelter in the city where that, where Velazquez-Gaspar lived. Here, it seems it's different because neither the BIA nor the government can point to any similar protections for the victims in the record, I wanted to give you the chance to point those to me if you could. Again, at AR-250 and 251, the report says that the law prohibits domestic violence one to three years in prison. The law also permits restraining orders, although it does say that the laws may not be well enforced in cases are not effectively prosecuted. Again, the counterbalancing. And there's also evidence that the Legislative Assembly approved the creation of specialized courts for violence for prosecution and hearing cases for violence against women. June 1st, 2017, the San Salvador court went into effect, and two other courts were scheduled to also go into service in 2017. The ISDEMU, which is a governmental agency, coordinates with the judicial and executive branches to conduct public awareness campaigns, collaboration between government and NGOs to educate, because again, this is a deeply ingrained societal bias against women. And so certainly, it is not going to happen overnight. And although petitioner downplays that it's less than 10%, it's actually closer to 10% than less than 10%. But compared to the United States where, you know, conviction rates hovered around three or 4%, 10% seems to be a very good start. And so yes, it may be minimally effective. But that evidence... In the United States, the three or 4% is of what? Of sexual related violence, sexual related convictions against women. And then the nine plus percent here is of what? Same. Sexual related crimes against women. You know, I don't think you know that. It's very hard to know what the denominator actually is in either case. Is the denominator in El Salvador a percentage of cases that are reported? Is it a percentage of cases that are reported and prosecuted? I mean, I'm not even sure I know that answer. I said reported and prosecuted, but I'm not sure the data actually tells us that, nor do we know precisely what's meant by United States denominator. What we have in the record, Your Honor, is that approximately 600 plus cases were reported, which resulted in approximately 60 plus convictions. So there is at least a 10% conviction rate. And again, where the record in this case and the board properly... And of the people, we don't know the number that were not reported, of course. That's correct. And we do know from the country report that a lot are not reported. I don't know what that number is. I'm not sure anybody does, because of course, they're not reported. But we're told that it's a very high number. That's true. But again, we can only work with what we do know. And what we do know is that there are these reports, and this is what happens when there are reports made to the government. I've got a version of Chief Judge McGeeh's questions, and that is, no society will be able to protect perfectly someone who's a victim of domestic abuse, as indeed we've just been discussing. We've got the problem here in this country. But where's the line? And I'm going to give you numbers that I'm hypothesizing. These are not real numbers. But let's assume that in El Salvador, we can know that in 50% of the cases where the domestic violence is reported, and the abuser has said, you know, if you report, I'm going to make you pay for it. We know in 50% of the cases, there's no protection effectively provided, and the person is abused as a result. Now, in that situation, has the standard of unable to protect been satisfied? And I'm not trying to avoid answering the question, Your Honor. I just, I can't say yes or no definitively, because again, it would depend on what other evidence there was in the record as every piece of evidence you need to answer the question. We know, and I'm making this up, but in the hypothetical, we know that in 50% of the cases in which the domestic violence is reported, there is no protection provided, and the retaliation is carried out. Now, in that instance, do we say that there is, that the government is unable or unwilling to protect, or do we say that they are willing and able? What do we do with those numbers? Do we know if the petitioner herself reported in that hypothetical, Your Honor? We know that she did not, because she knew, I'm assuming, that in 50% of the cases, she's going to suffer terribly, and the government is not going to protect her. No, she did not, and because she knew this. I think in that instance, again, it would be up to the board to decide, is that sufficient? And the board, in weighing, but again, can look to other evidence in the record that, again, is not present in yours. I understand that the hypothetical is very limited, but it's a little hard to consider the unable or unwilling issue in that kind of vacuum, because it's hard to quantify. But I think you understand my dilemma. There's no such thing as perfect protection, and if we were to say that in 99% of the cases in which there's a report, there's no protection, and the abuse continues, and indeed there's retaliation, we would say unable or unwilling. But there's a huge middle ground in there, and I'm at a loss in looking at the case law to figure out where in that middle ground the line is. It seems here that a rational person in her position would be fearful of going to the police. But again, if it's a 50-50 chance, if there's a chance of going either way, again, it's up to what the board decides in that instance. And then the question before the court would be, given that there is only a 50-50 split, does the record compel the conclusion that the board was wrong? That would be the question before the court. We've got case law from other contexts that tells us a 10% chance of being persecuted is enough. Now, this is not a domestic violence context, but in another context, 10% is enough. A 10% example isn't a test. It is by no means the floor or the ceiling when it comes to well-founded fear. It is simply an example, and I think to kind of overlay that quantification... I want to push back a little bit on that. We've got case law that says a 10% chance of persecution is sufficient. And again, that goes to well-founded fear, which is an analytically distinct question in the asylum rubric. So part of the government's view here is, I take it, that if the evidence admits of more than one conclusion, the result is driven by the standard of review. That's correct, Your Honor. And in this case, again, I think it's important. There's no question that what happened to her was horrible, and it shouldn't happen to any woman. And there's no question that she subjectively believed, and she was afraid to report because she was afraid of retaliation from Jose. But at the same time, the fact that Jose felt the need to threaten because he feared the prosecution, again, that's something that should play into the equation as well. If the persecutor has to threaten someone not to tell because there's an implication that the persecutor knows that there are consequences that may befall his actions. And that, again, supports the Board of Immigration Appeals' decision and conclusion here, that given all of the evidence that is in this record, and it considered all of them consistent with the law of the circuit as required, the record simply does not compel the conclusion the petitioner met her burden of establishing that the government of El Salvador is unable or unwilling to protect her from Jose. I know your time is up. Let me just ask one other question. How do we weigh the aunt's opinion compared to the record? Because the BIA relied on that, on the aunt's opinion, to conclude the government could protect. It might be a bit strong to say that the Board relied on it. I think the Board properly took that properly took it into account as a relevant consideration, and that decision by the Board to take it into account is certainly ratified, or at least consistent with the case law in Velazquez-Gaspar. Okay, any other questions? All right, thank you. Mr. Vanderhoof, you have some time. Thank you, Your Honor. I would just like to begin with the last discussion happening, and that is the Board did rely on both the aunt's opinion, and by opinion, we're saying the aunt suggested that the petitioner here report to police. There's no indication, and the Board doesn't suggest, that the aunt has any particular knowledge that reporting would have been successful or would have resulted in justice or protection for my client. And additionally, the clients having not reported, as we know, is not a requirement to establish that the government is unable and unwilling, as we've said before. Next, I would just like to say, speaking to the record that we do have before us, the respondent just now said that the record is sparse. I think that the Department of State report is quite comprehensive. I'll also say that it was submitted by the government before the immigration judge, and that was the only evidence that was submitted to supplement the record, acknowledging fully that my client bears the burdens in this case. But I would just draw the court's attention to its decision in Davila v. Barr, in which, similar to now citing from the record of the steps taken by the El Salvador government, in Davila v. Barr, this court held that the BIA was selectively highlighting parts of the country reports while ignoring information in the same paragraph talking about the failure of the what we have is the Department of State saying that the government of El Salvador, despite any steps it has taken, is minimally effective in protecting survivors of domestic violence. I would also like to draw the court's attention to, lastly, to its decision in Ringas Rodriguez v. Sessions. And there, the court, overturning the agency's decision before it on Bonk, cited to, forgive me, said that Mexico is lauded to be lauded for its efforts in its commitments to the LGBTI community, but de jure commitments do not align with de facto reality. And that is the case here as well. Despite any of El Salvador's efforts, the de facto reality is there is not protection and they are unable and unwilling. And I see that my time is up. Thank you very much. Thank you both, Mr. Vanderhoef and Ms. Wright, for your oral argument presentations here today. The case of Reyna Maribel Barrera-Larañega v. Merrick Garland is submitted.
judges: MURGUIA, FLETCHER, BENNETT